UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

───────────────────────────────────────────

UNITED STATES OF AMERICA,

             Plaintiff,

     v.

BRIAN CAMPBELL,

             Defendant.

───────────────────────────────────────────

REPORT & RECOMMENDATION

12-CR-6142G

**PRELIMINARY STATEMENT**

By Order of Hon. Charles J. Siragusa, United States District Judge, dated October 25, 2012, all pretrial matters in the above captioned case have been referred to this Court pursuant to 28 U.S.C. §§ 636(b)(1)(A)-(B). (Docket # 4). Currently pending before this Court for Report and Recommendation is Campbell's motion to dismiss Counts One and Four of the indictment returned against him.[1] (Docket # 23).

Defendant Brian Campbell ("Campbell") is charged in all twelve counts of the indictment, but only the first and the fourth are relevant to the pending motion. Count One charges that from August 2007 until June 2008, Campbell conspired with co-defendant Kenneth M. Griffin ("Griffin") to commit mail fraud and wire fraud, in violation of 18 U.S.C. § 1349. (Docket # 1). Specifically, the indictment alleges that the defendants conspired to defraud "factoring companies" and to obtain money from those companies by false and fraudulent

---

[1] Campbell's omnibus motion also sought, *inter alia*, discovery and inspection, *Brady* material, *Jencks* material, a bill of particulars, joinder in the pretrial motions of co-defendant Kenneth Griffin and severance. (Docket ## 23, 25). Each of these requests was either resolved by the parties or decided in open court by the undersigned on June 4, 2013. (Docket ## 30-31).

pretenses and, for the purpose of executing the scheme, they "deposit[ed] or caus[ed] to be deposited, matter to be sent and delivered by private and commercial interstate carriers" and "transmitt[ed], and caus[ed], to be transmitted . . . wire communication[s] in interstate commerce." (Docket # 1 at 5-6, ¶¶ 2, 2(a), 2(b)). Count Four also charges them with conspiracy to commit money laundering, in violation of 18 U.S.C. § 1956(h). (*Id.* at 19, ¶¶ 2, 2(a), 2(b)).

For the following reasons, it is the recommendation of this Court that Campbell's motion to dismiss Counts One and Four be denied.

## DISCUSSION

### I. Sufficiency of the Indictment

#### A. Allegations in Counts One and Four

The indictment alleges that during the time period relevant to this prosecution, Griffin owned and controlled an employment staffing business that operated under various names, including LHT USA, Inc. ("LHT") and Cambridge Personnel, Inc. ("Cambridge") (collectively, the "employment staffing business"). (Docket # 1 at 1, ¶ 1). It further alleges that Campbell worked at the employment staffing business and was "responsible for the financial aspects of the business, including bookkeeping, accounting, billing and payroll matters." (*Id.* at 2, ¶ 2).

According to the indictment, the employment staffing business hired employees and then "s[old] the employees' labor to its customers." (*Id.* at 1, ¶ 1). The employment staffing business then issued invoices to those customers ("the customers") for the services that the

2

employees had provided.[2] (*Id.* at 2, ¶ 3; 3, ¶ 5). Those invoices, or "accounts receivable," were subsequently sold to the "factoring companies" at a discount; according to the indictment, the factoring companies "made a profit by collecting from the customer[s] the full amount of the accounts receivable, but also assumed the costs and risks of collection." (*Id.* at 2, ¶ 4; 3, ¶ 5). Griffin and Campbell allegedly established an account at Comdata, a financial services company, into which the factoring companies deposited their payments for the purchase of the accounts receivable. (*Id.* at 4, ¶¶ 7-8). Griffin and Campbell then "load[ed]" the deposited sums onto debit cards, which were linked to the Comdata account. (*Id.* at 4, ¶ 8).

Count One charges Campbell and Griffin with conspiring to commit mail fraud and wire fraud by creating fictitious accounts receivable reflecting employee services purportedly provided to the customers, but that were never actually provided. (*Id.* at 7, ¶ 4). According to the indictment, Griffin and Campbell sold the fictitious accounts receivable to factoring companies, including Amerisource Funding ("Amerisource"), Interstate Capital Corporation ("ICC") and New Century Financial ("NCF"), "by falsely and fraudulently representing to them that such accounts receivable represented money owed to [the] employment staffing business by its customers." (*Id.* at 3, ¶ 6; 5-6, ¶¶ 2-3). Count One further alleges that Campbell and Griffin executed the fraud by causing the employment staffing business to transmit information to one of the factoring company victims (NCF) by wire communications, including facsimile and email, and by causing the company to wire funds representing the payments for the fictitious accounts receivable into the Comdata bank account. (*Id.* at 12, ¶¶ 25-39; 13, ¶¶ 40-52; 14, ¶ 53).

---

[2] The description of the purported scheme is based upon the allegations of the indictment.

The indictment also alleges that as part of the fraudulent scheme, Griffin and Campbell falsified several checks to appear as if they had been issued from the customers and sent those checks to NCF by commercial carrier. (*Id.* at 15, ¶¶ 54-60). According to the indictment, the falsified checks were sent to NCF to create the false impression that the customers were making payments on the fictitious accounts receivable that NCF had purchased. (*Id.*). Finally, Count One of the indictment alleges that Griffin concealed his ownership interest in the employment staffing business by representing that other individuals were the owners. (*Id.* at 1, ¶ 1; 8, ¶ 8; 10, ¶ 20).

Count Four of the indictment charges Campbell and Griffin with conspiring to commit money laundering through the use of the Comdata account. (*Id.* at 20, ¶ 3). Count Four alleges that after receiving payments from the factoring companies, Campbell caused the funds that had been deposited into the Comdata account to be loaded onto individual Comdata debit cards. (*Id.* at 21, ¶ 4; 22, ¶ 7). Those debit cards were allegedly provided to certain unidentified individuals, who were instructed to deplete the debit cards by withdrawing cash at ATMs and to provide the cash to Griffin; Griffin then divided the cash with Campbell and others. (*Id.*).

**B. Campbell's Challenge to the Sufficiency of the Charges**

Campbell moves to dismiss Count One on the grounds that it is deficient on its face because it does not specifically allege whether Campbell conspired to defraud Amerisource and ICC by means of mail and/or wire communications. (Docket # 23 at ¶¶ 8-9). According to Campbell, without additional detail, he will be prevented from raising a double jeopardy bar to any subsequent prosecution based upon the same events. (*Id.*). In addition, Campbell argues that Count Four should be dismissed on the grounds that it is deficient on its face because it does

not sufficiently allege that Campbell and Griffin acted with the intent to conceal or disguise the nature, location, source, ownership and control of the proceeds. (*Id.* at ¶¶ 11-18).

Federal Rule of Criminal Procedure 7(c)(1) provides, inter alia, that the "indictment . . . must be a plain, concise and definite written statement of the essential facts constituting the offense charged." Fed. R. Crim. P. 7(c)(1). Under this rule, "it is still essential that every element of an offense be stated and that the defendant be given fair notice of the charge against him." *United States v. Hernandez*, 980 F.2d 868, 871 (2d Cir. 1992) (quoting 1 Charles A. Wright, *Federal Practice and Procedure*: Criminal § 123, at 348 (2d ed. 1982) (footnote omitted)). The purpose of this rule is to ensure that the defendant is sufficiently apprised of the charges he faces so that he may prepare a defense and to enable him to plead double jeopardy in any subsequent prosecution. *United States v. Stavroulakis*, 952 F.2d 686, 693 (2d Cir.), *cert. denied*, 504 U.S. 926 (1992); *United States v. Carrier*, 672 F.2d 300, 303 (2d Cir.), *cert. denied*, 457 U.S. 1139 (1982).

In interpreting Rule 7, the Second Circuit has stated that "'an indictment need do little more than to track the language of the statute charged and state the time and place (in approximate terms) of the alleged crime.'" *United States v. Stavroulakis*, 952 F.2d at 693 (quoting *United States v. Tramunti*, 513 F.2d 1087, 1113 (2d Cir.), *cert. denied*, 423 U.S. 832 (1975)). Further, "[a]n indictment for conspiracy to commit a federal offense need not allege the conspiracy with the same 'technical precision' and 'detail' as would be required in an indictment if the object offense had been charged." *United States v. Bidloff*, 82 F. Supp. 2d 86, 91 (W.D.N.Y. 2000). Here, Counts One and Four properly track the language of the respective

5

statutes charged and enable Campbell to prepare a defense and to interpose a defense of double jeopardy to a subsequent prosecution.

The first count clearly advises Campbell that he is charged with conspiring with Griffin to commit mail and wire fraud by inducing the factoring companies to purchase fictitious invoices for services that the employment staffing business never provided and by executing the scheme by mailing fraudulent checks to deceive the factoring companies into believing the accounts receivable were genuine. It further alleges that the fraudulent scheme was executed by directing the factoring companies to pay for the accounts receivable they purchased by making wire deposits in the Comdata account. "[M]ail fraud occurs when money is obtained by means of false pretenses or representations as a result of a scheme to defraud involving the use of the mail . . . [and] [w]ire fraud occurs when such fraud involves use of a wire." *Id.* (citing 18 U.S.C. §§ 1341 and 1343).

The allegations of Count One describe a scheme by which Campbell and Griffin allegedly defrauded three separate companies. The indictment identifies the monetary amounts of the fictitious accounts receivable sold to the companies and identifies numerous alleged wire and mail communications that were sent to NCF. In addition, the indictment tracks the language of the conspiracy, mail and wire fraud statutes. Taken together, Count One of the indictment is plainly sufficient to charge a conspiracy to commit mail and wire fraud. *See id.* at 91 ("[w]here the indictment alleges a conspiracy to commit mail fraud, the indictment is sufficient if the allegation of the scheme to defraud provides sufficient details as to the fraudulent nature of the scheme without alleging specifics of the fraudulent misrepresentation").

Campbell contends that Count One should be dismissed because it does not specify the means (*i.e.*, mail or wire) that Campbell conspired to use to defraud Amerisource and ICC. (Docket # 23 at ¶ 8). Campbell has not cited any authority for the contention that the government must identify the means used to defraud each individual victim of a conspiracy to commit mail or wire fraud. With respect to both Amerisource and ICC, the indictment alleges the specific amounts of the allegedly fraudulent accounts receivable sold to those factoring companies, along with the identity of the customer that was purportedly associated with each fictitious account receivable. This Court is unaware of any authority to suggest that an indictment is deficient because it does not identify a mailing or wire communication associated with each targeted victim of the conspiracy.

I likewise conclude that Count Four is adequately pled. It alleges that Campbell conspired to commit money laundering by violating 18 U.S.C. §§ 1956(a)(1)(B)(i) and 1957(a). Campbell challenges the adequacy of the allegations pertaining to the conspiracy to violate Section 1956(a), contending that they do not adequately allege "how it is that [the defendant] allegedly concealed funds." (Docket # 23 at ¶ 17).

Section 1956 provides that a person commits money laundering when:

> knowing that the property involved in a financial transaction
> represents the proceeds of some form of unlawful activity, [he]
> conducts or attempts to conduct such a financial transaction which
> in fact involves the proceeds of specified unlawful activity
> knowing that the transaction is designed in whole or in part to
> conceal or disguise that nature, the location, the source, the
> ownership, or the control of the proceeds of specified unlawful
> activity.

*United States v. Kaczowski*, 882 F. Supp. 304, 307 (W.D.N.Y. 1994) (quoting 18 U.S.C. § 1956 (a)(1)(B)(i)). Count Four alleges that Campbell and Griffin established a banking account in the

7

name of the employment staffing business and directed the factoring companies to pay for the fictitious accounts receivable by wiring money into that account. The indictment further alleges that Campbell caused the deposited funds to be loaded to debit cards associated with the account and provided the cards and the associated PIN numbers to third parties whom he directed to withdraw the funds at ATMs and provide the cash to Griffin. The indictment adequately alleges a conspiracy to violate Section 1956(a)(1)(B)(i). *Id.* at 308 ("the court may not look beyond a facially valid indictment to determine if the evidence upon which it is based is sufficient").

I disagree with Campbell's assertion that the factual allegations are insufficient to adequately allege an intent to conceal "the nature, location, source, ownership or control" of the illegal funds. Conduct indicative of intent to conceal may include "statements by a defendant probative of intent to conceal; unusual secrecy surrounding the transaction; structuring the transaction in a way to avoid attention; depositing illegal profits in the bank account of a legitimate business; highly irregular features of the transaction; using third parties to conceal the real owner; [and] a series of unusual financial moves cumulating in the transaction." *United States v. Allen*, 2013 WL 593925, *7 (E.D. Tenn. 2013) (quoting *United States v. Marshall*, 248 F.3d 525, 538 (6th Cir. 2001)).

Whether the government's proof will be adequate to establish Campbell's guilt is, of course, a question for another day, *see United States v. Kaczowski*, 882 F. Supp. at 308 ("that argument is more appropriately addressed to the trial court after the completion of the government's affirmative case, and is therefore premature"); at this stage, the indictment, which alleges that Campbell directed that the funds paid to the employee staffing business be withdrawn in cash by unidentified third parties through ATM transactions and then turned over

8

to Griffin, is plainly sufficient to allege a concealment motive within the meaning of the statute. *See Allen*, 2013 WL 593925 at *7 (indictment sufficiently alleged money laundering where "[t]he quick succession of opening the account and depositing checks and the similarly quick liquidation of the account all serve as evidence of [defendant's] intent to conceal the true nature of the illegally obtained proceeds"); *see also United States v. Johnson*, 440 F.3d 1286, 1293 (11th Cir. 2006) (evidence of use of third parties may demonstrate concealment motive), *cert. denied*, 552 U.S. 912 (2007).

Because I find that Counts One and Four of the indictment satisfy the requirements of Fed. R. Crim. P. 7(c)(1), I recommend that the district court deny Campbell's motion to dismiss those counts on the grounds of deficient pleading.

## II. Duplicity

Campbell also moves to dismiss Count One of the indictment on the grounds that it is duplicitous. According to Campbell, Count One impermissibly charges two separate conspiracies, one to commit mail fraud and the other to commit wire fraud.[3] (Docket # 23 at ¶¶ 20-22).

"An indictment is invalidly duplicitous when it joins in a single count two or more distinct and separate offenses." *United States v. Droms,* 566 F.2d 361, 363 (2d Cir. 1977). A count should be found duplicitous only when "the policy goals underlying this doctrine are

---

[3] Campbell also contends that paragraphs 10 and 15 of Count One of the indictment contain surplusage, but he does not explain why the information contained in those paragraphs – which appears to be factually related to the alleged scheme – is surplusage. (Docket # 23 at ¶¶ 27-28). Accordingly, to the extent Campbell seeks to strike those paragraphs of the indictment, that portion of his motion is denied without prejudice to renewal before the district judge.

9

offended, *i.e.*, 'if a general verdict of guilty might actually conceal findings as to different alleged crimes, or if an appropriate basis for sentencing is not provided.'" *United States v. Parker*, 165 F. Supp. 2d 431, 447 (W.D.N.Y. 2001) (quoting *Blockburger v. United States*, 284 U.S. 299, 304 (1932)). "An indictment is not duplicitous merely because it alleges a conspiracy to commit multiple crimes." *United States v. Vilar*, 2008 WL 4298545, *1 (S.D.N.Y. 2008). In addition, duplicity is a rule of pleading and its violation does not warrant dismissal. *United States v. Droms*, 566 F.2d at 363 n.1 (citing *Reno v. United States*, 317 F.2d 499, 502 (5th Cir.), *cert. denied*, 375 U.S. 828 (1963); 1 C. Wright, *Federal Practice and Procedure*, § 142, 311 (1969)). Rather, the appropriate remedy is to require the government, prior to trial, to elect between the duplicitous charges. *Id.* at 363; *United States v. Parker*, 165 F. Supp. 2d at 451.

      I disagree with Campbell's contention that Count One of the indictment is duplicitous. Campbell contends that Count One alleges two separate conspiracies: the first a conspiracy to sell fraudulent invoices using wire communications; and, the second a conspiracy to mail fraudulent checks to the factoring companies to create the appearance that the payments were being mailed on the fraudulent invoices. (Docket # 23 at ¶¶ 20-21). The Second Circuit has repeatedly held that acts that could be separately charged may be charged in a single count if the acts could be "characterized as part of a single continuing scheme." *United States v. Vilar*, 2008 WL 4298545 at *1 (quoting *United States v. Tutino*, 883 F.2d 1125, 1141 (2d Cir. 1989)). Aggregation of the acts is permissible under such circumstances "[a]s long as the essence of the alleged crime is carrying out a single scheme to defraud." *Id.* (quoting *United States v. Tutino*, 883 F.2d at 1141).

Contrary to Campbell's contention, Count One alleges a single scheme to defraud the factoring companies through various means, including wire fraud and mail fraud. *See*, *e.g.*, *United States v. Schlesinger*, 261 F. App'x 355, 358 (2d Cir.) (count alleging conspiracy to commit mail and wire fraud not duplicitous where indictment alleged ongoing scheme), *cert. denied*, 555 U.S. 827 (2008); *Vilar*, 2008 WL 4298545 at *1 (count that specified five objects of conspiracy, including mail fraud, wire fraud and money laundering, not duplicitous where a single overarching scheme to defraud was alleged); *United States v. Gall*, 1996 WL 684404, *2-3 (D. Conn. 1996) (count alleging conspiracy to commit mail and wire fraud not duplicitous where indictment alleged single conspiracy to defraud executed through "different means and phases").

## CONCLUSION

For the foregoing reasons, it is my recommendation that defendant's motion to dismiss Counts One and Four of the indictment **(Docket # 23)** be **DENIED**.

                                         *s/Marian W. Payson*
                                            MARIAN W. PAYSON
                                         United States Magistrate Judge

Dated: Rochester, New York
        July  2 , 2013

Pursuant to 28 U.S.C. § 636(b)(1), it is hereby

**ORDERED**, that this Report and Recommendation be filed with the Clerk of the Court.

**ANY OBJECTIONS** to this Report and Recommendation must be filed with the Clerk of this Court within fourteen (14) days after receipt of a copy of this Report and Recommendation in accordance with the above statute and Rule 59(b) of the Local Rules of Criminal Procedure for the Western District of New York.[4]

The district court will ordinarily refuse to consider on *de novo* review arguments, case law and/or evidentiary material which could have been, but was not, presented to the magistrate judge in the first instance. *See*, *e.g.*, *Paterson-Leitch Co. v. Mass. Mun. Wholesale Elec. Co.*, 840 F.2d 985 (1st Cir. 1988).

**Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Court's Order.** *Thomas v. Arn*, 474 U.S. 140 (1985); *Small v. Sec'y of Health & Human Servs.*, 892 F.2d 15 (2d Cir. 1989); *Wesolek v. Canadair Ltd.,* 838 F.2d 55 (2d Cir. 1988).

The parties are reminded that, pursuant to Rule 59(b) of the Local Rules of Criminal Procedure for the Western District of New York, "[w]ritten objections . . . shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for such objection and shall be supported by legal authority." **Failure to comply with the provisions of Rule 59(b) may result in the District Court's refusal to consider the objection.**

Let the Clerk send a copy of this Order and a copy of the Report and Recommendation to the attorneys for the parties.

**IT IS SO ORDERED.**

                                           *s/Marian W. Payson*
                                            MARIAN W. PAYSON
                                          United States Magistrate Judge

Dated: Rochester, New York
         July  2 , 2013

---

[4] Counsel is advised that a new period of excludable time pursuant to 18 U.S.C. § 3161(h)(1)(D) commences with the filing of this Report and Recommendation. Such period of excludable delay lasts only until objections to this Report and Recommendation are filed or until the fourteen days allowed for filing objections has elapsed. *United States v. Andress*, 943 F.2d 622 (6th Cir. 1991); *United States v. Long*, 900 F.2d 1270 (8th Cir. 1990).